United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Good morning. This is Judge Wilson in Tampa. Judge Marcus is in Miami and Judge Bush is in Louisville, Kentucky. Judge Marcus and I would like to thank Judge Bush who is here from the 6th Circuit to assist us in deciding these cases this morning. Judge Bush, Judge Marcus and I had hoped to welcome you personally in Miami, but obviously present circumstances made that arrangement unwise. But we do appreciate the assistance that you're giving us on these appeals this week. It's my pleasure. It's a great privilege to sit with you, so thank you for that welcome. Mr. Maycock of the Circuit Executive's Office advises me that counsel are present and they're ready to proceed. Ms. Tisa is our courtroom deputy and she will serve as the timekeeper this morning. And she will let us know when counsel have two minutes left to argue and she will let us know when their time is up. Counsel, the panel has not previously conferred about these appeals, but I can advise you that we've read the briefs and we've examined the relevant parts of the record. That will assist you in confining your arguments to the issues on appeal. So we'll begin with the first case this morning. It's Securities and Exchange Commission v. Quiros, Stenger, Cosgrove and other appellates. Mr. Kahn is here for the appellates. Ms. Visconti, Melissa Visconti is here for Appley-Quiros. Joseph Ghilardi is here for Appley-Ironshore. And Stephanie Traban is here for Appley-Goldberg. And Mr. Kahn, are you ready to proceed? Yes, Your Honor. You may. Good morning, Your Honors, and may it please the Court. My name is Jeremy Kahn and I represent the appellants, Leon Cosgrove and MSK. This Court has stated that bar orders should be entered cautiously and infrequently and only where essential, fair, and equitable. The bar order in this case enjoins appellants who are not parties to this case from proceeding in their pending litigation in New York State Court against an insurance company, Ironshore, which is also not a party to this case. So, in other words, unlike the bar orders that are commonly seen in the case law where a non-settling defendant's claims against a settling defendant are barred, this bar order bars non-parties' claims against another non-party. This is Judge Wilson. Would Ironshore have issued the final settlement payment without the bar order? The settling provides that the final settlement payment, which is a defined term in the settlement, would not be paid without the bar order. Well, then it's essential then, isn't it? It is not, Your Honor, because the definition of essential is whether the litigation among the settling parties will be terminated by the settlement without the entry of the bar order, or whether all the claims and defenses among the settling parties would be resolved, or whether litigation would not continue. And here, that's exactly how the parties structure their settlements. So, the first issue on appeal is whether it is essential, and I want to go through several provisions in the settlement. Let me ask you, this is Judge Marcus, if I can, I'd just like to ask you a prefatory question. Is a finding by the district court that a bar order is necessary to settlement a finding of fact that we review only for clear error, or do we review the determination of necessity de novo? Your Honor, I believe in this case it is de novo because it requires the application of the law, whether the bar order is essential, to obtain litigation. So, it's a mixed question of law, in fact, as you see it. I can see some situations where there would be factual findings, but in this case, it's just a straight application of the law to the terms of the party settlement, which are in the record. And just based on that, just looking at the terms of applying the law to the contract and approving the contract, that's a de novo question. So, and that's a question of law. And going through the specific terms in the party settlement, starting with recital L, it states that the parties have agreed to a full and final settlement of their rights and defenses. And it says that a condition preceding to what the parties call the full effectiveness of the settlement is the entry of an Exhibit A to the settlement, a preliminary approval order, and an Exhibit B to the settlement, the final approval order. Neither of those orders contain the bar order. Then in the next sentence, so we're past the part about deciding what's a condition proceeding to the full effectiveness of the settlement. Recital L says, in addition, a final payment as defined below, and that's the $500,000 payment, will be made only if the district court and the SEC action enters an order that's in Exhibit C, which is the bar order. So, it's already in recitals, the parties are saying the full effectiveness of the settlement is only for the final approval order. And Exhibit C, the bar order, is basically an additional gratuitous order that provides for an additional gratuitous payment that's not essential to the full effectiveness of the settlement. Then going on to Paragraph 3 in the settlement, and I'm looking at Paragraph 3A. Paragraph 3A subsection lowercase iv states, for the avoidance of doubt, the installment payments, and then the way this was structured was that there would be several installment payments adding up to $1.4 million that Ironshore would pay to the other settling parties. And then later on, the settlement defines a final payment, which is separate from the defined term installment payments of $500,000. So, this is only talking about the installment payments. For the avoidance of doubt, the installment payments shall be due and owing regardless of whether the district court and the SEC action issues a bar order, and regardless of whether a bar order, if one is issued, becomes final and not appealable. Then the next subsection, lowercase d, states, notwithstanding any other provision in this agreement, the releases in Paragraph 8 below shall become irrevocably effective upon payment of the installment payments. And again, the installment payments are not the bar order payment. It's just the $1.4 million. So, it does not say the installment payment and the final payment. It just says the installment payments. Then Paragraph 3b addresses the bar order specifically and says, for avoidance of doubt, the final payment shall not be paid to the receiver unless and until the bar order becomes final and not appealable. But the party shall continue to be bound by the releases set forth in Section 8 of this agreement. So, it doesn't matter whether the bar order is entered. All that matters is whether the $1.4 million is paid. Let me ask you a question. Let me stop you for a second. This is Judge Marcus. Let me ask you a question about the terms, the language, and the agreement. The agreement says, among other things, quote, that the parties understand and agree that their settlement is contingent on the district court approving this agreement and that the parties shall seek the issuance of a bar order in the SEC action. Does that not suggest that it was a condition preceding to the operation of the settlement that the parties seek the bar order? It does not, Your Honor, because the settlement agreement, both in the provision that Your Honor is reading as well as in Recital K, is carefully drafted to avoid saying that. It says that there's a condition that the settlement will become final and the parties will seek. Not that there's a condition that the court will enter a bar order, just that the parties are going to try to obtain one. And then, again, going down even further, regarding the dismissal of the litigation that's being settled, in paragraph 9, it says, upon entry of the final approval order. So it doesn't say upon entry of the final approval order and the bar order. It just says, upon entry of the final approval order and payment of the installment payments. Again, not payment of the installment payments and payment of the final payment. Just payment of the installment payments. Kiros, the receiver in Ironsource, shall cause to be filed a joint dismissal of all their claims in the coverage action with prejudice. So, again, all the litigation is ending regardless of whether a bar order is entered. And then, once again, in paragraph 17, the parties say, for the avoidance of doubt, if the bar order is entered but subsequently dissolved or reversed, either by the district court or on appeal, this agreement shall continue to be enforceable. So, the parties made clear in a number of provisions of their settlement agreement that the price of settling the claims of the settling parties against Ironsource is $1.4 million. And that's an amount that Ironsource is willing to pay in exchange for release of those claims and in exchange for ending all the litigation among the settling parties. Then what they did was they added an additional $500,000 bonus payment if a bar order is entered. But if it's not entered, it does not vitiate the settlement at all. The settlement remains fully effective in the words of the parties themselves in their agreement. So, there's no way that this bar order can be rendered essential. It's definitively not essential because, regardless of whether it's entered, the litigation ends. Recognizing that... This is Judge Wilson, and we're reviewing the decision of the district court for an abuse of discretion. Is that right? I think there are two pieces to that. I think the question, the issue of whether the bar order is fair and reasonable is reviewed for abuse of discretion. I believe whether the bar order is essential is a question of law and that that would be reviewed to no vote. The 11th Circuit has never held that essential means essential to resolving the litigation, have we? In fact, we have a prior decision, a 1992 decision, NRA Oil and Gas, where we affirmed a bar order even though it was not essential to the settlement agreement. If we review it for an abuse of discretion, how does the district judge abuse its discretion if it's got a prior 11th Circuit case law where we affirm the bar order even though it was not essential to a settlement agreement? Your Honor, the reason is because NRA, U.S. Oil and Gas, was decided before there was ever an essentialness requirement that was in the case law in this court. It was before the decision in Mumford. It was before the decision in Seaside. Actually, NRA Oil and Gas states that the reason that the parties had that unique provision was that the case law was basically scarce in the 11th Circuit regarding what's required for a bar order and what kind of bars can be approved. The 11th Circuit court only addressed the specific challenge by the appellant in that case, which was that a bar order could not apply to a indemnification claim or an independent claim. So, the court never addressed the essentialness issue because it was never raised by the appellant and it wasn't in the case law. Subsequently, this court has stated that NRA Oil and Gas is actually a narrow decision that only addresses the merits of the appellant's specific challenge. The court said that in AAL High Yield Bond Fund v. Deloitte. Subsequently, the court has gone out of its way in case the state...  Mr. Kahn, this is Judge Bush. I'd like to just get in a quick question. Since I'm from the 6th Circuit, I'd like to ask about what about these factors from NRA Dow Corning that the 11th Circuit cited approvingly in Seaside? None of these factors have been really briefed. Are they not relevant in this case? Your Honor, I believe some of them are relevant and have been briefed. There are some factors that apply only to a plan of reorganization, but there are other factors that apply in general, such as the interrelatedness of the claims, which here the claim is not related. Appellants are non-parties suing another non-party under an interim funding agreement, which is separate from the insurance policy, and there's no effect at all on the estate or on the receivership estate. And this is actually not even a claim that the receiver would be empowered to bring based on the order that created the receivership. Let me ask you this about the New York suit. Is there any liability for the receiver in that New York suit? No, none at all. Is there any liability for queros in the New York suit? None at all. The New York suit is strictly a breach-of-contract claim by Leon Kostrov and MSK against Ironshore, and it has nothing to do with any of the other parties. No one else is being sued. There's no contingent liability against anyone else. It's a completely separate, unrelated claim, and I believe this will be the first decision to approve the bar order to allow a bar order barring a claim that's separate and independent from what's going on in the receivership case with a non-party claim against another non-party. Mr. Kahn, this is Judge Marcus. Again, I want to follow up on what we have in the record. One of the things that I looked at was what the parties filed in a memorandum along with the settlement agreement and the motion for approval by the district court. In the memorandum, the parties seemed to argue that the entry of the bar order was a necessary component of the bargain for settlement. Thus, for example, in the brief it said, the bar order has been a key settlement term with Ironshore since the commencement of the parties' discussions. In colloquial terms, the total amount that Ironshore is willing to settle for is contingent upon what they call a so-called global piece with respect to all claims that could be asserted against Ironshore relating in any way whatsoever to the policies or to Ironshore's obligation to pay any insured or any of the insured's current or former attorneys, including the IFA action. The bar order is thus a condition preceding to the payment of the fourth tranche of the settlement agreement. Then at another point, the memorandum from the parties say, the bar order is necessary and appropriate ancillary relief to the SEC action. At another point, they say the bar order is necessary to secure substantial additional consideration. At another point, they call it integral to the settlement. The district court looked at all of that. And what I want to know is why his determination was an abuse of discretion. I think you're right that this is an unusual case. We've never had one where the bar order came up in quite this context. We've seen it in bankruptcy, et cetera. But why couldn't the district court rely upon these statements by the parties to reach the conclusion that this was really a big deal, the bar order, that it was a pivotal part of the agreement to buy peace from permanent litigation? Your Honor, I see my time has expired. No, but if you could answer, I'd be much appreciative. Yes, Your Honor. Even if the abuse of discretion standard applies, it would be an abuse of discretion because the statements in the party's brief is not evident, and the evidence of the party's agreement is the party's agreement itself. And what it provides is that Ironsore is willing to pay $1.4 million, and the settling parties are willing to receive $1.4 million in exchange for a release to resolve the litigation amongst them. And Leon Cosgrove and MS King were not at the settlement table. Their rights were being adjudicated by Ironsore and the other settling parties without them. And yet while Ironsore might want global peace, that's not what it's entitled to when it's to just settle the claims that are being settled by the agreement among the settling parties. And the definition of essential is whether the litigation would continue among the settling parties themselves, and it would for only the $1.4 million. And that's why it would be even abuse of discretion to say that a gratuitous $500,000 payment to bar separate claims of non-parties to the case and non-parties to the settlement would be to say that that would be essential when it's not. And for that reason, Your Honor, we ask that the court vacate the bar order. So is it your view, then, that the district court was not free to consider the statement by the parties in support of the motion for a bar order, and it could only look at the language? It could not look at any extrinsic evidence that bore upon how essential this was? For two reasons, no. First of all, the settlement is not ambiguous at all, so there would be no reason to look at extrinsic evidence. And two, the statements of the parties in their brief, even in the lower court, were not contradictory. What they said was that the bar order is essential for global peace, for even non-parties to the settlement to resolve those claims, which would be true in any bar order case. And if that would be the standard, then there would never even be a reason to have a hearing on a bar order because it would be a self-fulfilling prophecy that the bar order would always be entered because a bar order, by definition, buys global peace. But the standard is whether it's essential to resolve just the claims amongst the settling parties, and whether the settling defendant, if you're ironshore, would enter into the settlement agreement without the bar order to resolve the claims of the actual settling parties, and not non-parties to the settlement. And that's why those statements don't even contradict. Even if they could be, they don't even contradict what the claimant of the settlement agreement says. All right. Thank you. Thank you, Mr. Kahn. I think you've preserved some time for rebuttal. And we will now hear from Ms. Visconti on behalf of Apolli Kiros. Good morning, Your Honors, and may it please the Court. This is Melissa Visconti, and I represent the Apolli Ariel Kiros, and I'm here along with the co-Apolli's ironshore, which is represented by Mr. Ghilardi, and the receiver, Michael Goldberg, who is represented by Stephanie Traband. First, to go to the point that was raised by both Judge Marcus and Judge Wilson, the standard of review is abuse of discretion. The Eleventh Circuit has made that very clear. When the court is considering bar orders, it reviews the bar orders for abuse of discretion. It is also clear that the district court has very broad powers and very wide discretion when it's exercising its equitable powers in receiverships like this and in connection with bar orders. To also go to Judge Marcus's point about whether this $500,000. . . The entry of a bar order, at least in a receivership context, we review it for an abuse of discretion, but we've also said that a bar order is extraordinary. It's an extraordinary remedy, and it is to be used cautiously and infrequently and only where essential and fair and equitable. That's a pretty high standard, isn't it? It is a high standard, and that's why, in this case, the parties made it extremely clear both in their written settlement agreement and in all of the supporting papers when they moved for approval of the bar order in the district court, and the district court went to great lengths to consider all of the facts and circumstances in determining that more than one quarter of this settlement, the full settlement payment, was absolutely necessary. I'm sorry, the bar order . . . This is Judge Wilson again. Doesn't the settlement agreement make it crystal clear that the parties still have to release their claims if the district court refuses to issue a bar order? Sure. And if that's the case . . . Yes. If that's the case, it's not essential. Well, no, the releases is not the most important thing about this bar order. The complete resolution of this litigation was not just the releases but the payment. These parties worked really hard. It was a hard-fought settlement to get to $1.9 million. The receiver and the other parties were not going to walk away from the table for anything less than $1.9 million, and Ironshore was not going to walk away for anything less than a bar order. The only way we got there was by conditioning this last very significant part of this settlement on the bar order. Everybody's talking about this gratuitous payment of $500,000. That's a huge amount of money, and it was important. It was really important to this settlement. It wasn't just a bonus payment. It was a holdback that was not going to happen. This case was not going to be completely resolved without that bar order. Ms. Visconti, this is Judge Bush. I'm having a difficulty understanding how QUROs could get paid for this lawsuit, given that I'm looking at the interim funding agreement, and it seems like QUROs only have liability under that agreement. It doesn't have really any asset, because aren't all the payments under the agreement to go to the law firms? The payments under the interim funding agreement, that was an agreement between Ironshore and Mr. QUROs. So the payments, they're defined actually under the insurance policies, because that IFA was born out of and completely dependent on those insurance policies. And under those insurance policies, Mr. QUROs is the covered person. So those are his defense costs. The money was going to the law firms, wasn't it? The money was going to Mr. QUROs, and he was able to use that for his defense costs, and the law firms were approved. There were four approved law firms, including these two. The other two law firms, they're not involved in this litigation? They're not involved in the IFA litigation. They're not suing on it. Are they involved in the New York litigation? They're not involved in the New York IFA litigation, but they were approved firms, and if they did any work during that period, unfortunately what happened was they- Has there been any litigation brought by the law firms, in this case the appellant law firms, against QUROs for recovery of their fees? No. Well, Mr. QUROs and the receiver have both sued the law firms for malpractice and for overpayment, and one of the cases the law firms turned around and counterclaimed for payment of their fees. For the receiver, they would have to- Is that litigation still pending? Yes. That litigation is pending, and it has a lot to do with the law firms- This bar order actually is not a global settlement because there still are pending- There still will be pending litigation between the receiver, QUROs, and the law firms, correct? Well, it's a global resolution for the parties to the litigation that's being settled, and that is the litigation- It's not a global resolution in the sense that it's ending all of the claims involving the law firms. Is that correct? Ending all the claims involving the law firms? No. The law firms are continuing because they're the defendants in malpractice claims. Essentially, it's QUROs' position. It would like to continue to sue the law firms, but it wants to bar the law firms' claims against the receiver-I'm sorry, against Ironshore for its fees. Essentially, they want the malpractice claims to go forward, but any claims of the law firms back for their fees to be barred. That's kind of a little off. The law firms' claims are only against the insurance company because the law firms are trying to say that outside of the policies, they had some independent contract with the insurance companies, and that's not actually the case. They're only suing the insurance companies. However, because they're suing the insurance company pursuant to the insurance policy, that policy is owned by the receiver, and Mr. QUROs is a covered person under that policy. So, yes, Mr. QUROs and the receiver are involved in that litigation, even though they're not parties to it, but the global resolution is actually that, is this litigation over these insurance policies. That's been resolved, and this is the only thing hanging out there. It's your contention then that the lawsuit between QUROs and the law firms is not related to this settlement. That's not essential. It was not essential to this settlement, correct? The litigation between QUROs and the law firms is not essential to the Ironshore litigation? Not essential to the settlement. We're looking at now the bar, which includes this bar order, against the law firms for proceeding against Ironshore. Right. What's essential is the bar order. If you flip it around, the bar order is essential to the settlement, and the settlement protects the receivership estate, and that's really the issue here. That's where the discretion comes in. The court's discretion comes in because there's an equity receiver here, and this insurance payment goes to the benefit of the receivership estate, and the receivership estate is losing out of this last $500,000 payment that's going to go to creditors and investors to the estate. It's losing out on it if it doesn't get the bar order. That bar order is extremely important. It's essential. This settlement is not done if that bar order is not in place. For my litigation involving the interim funding agreement, it seems like that was intended, that agreement was for the proceeds to go to law firms, and in order to settle that suit, there was a bar order entered in this case, which provided $500,000, $250,000 of it going to the receiver, and that's to go to general creditors. In essence, monies that were under the IFA were only to go to law firms. Some of those monies now are going to just general creditors. Right. All of it was intended to go to the receiver, and the receiver was to distribute it, and half of it was to go to creditors and investors pursuant to the agreement. It just seems like a windfall to me to the receiver because the receiver doesn't really have any rights under that agreement. Most queros had the rights, but the monies were going to go through queros to the law firm, so it does seem like a windfall to me to be getting at least $250,000 out of this. I'm sorry, I didn't mean to interrupt you, Judge Bush. May I respond? Yes. I'm sorry. You may respond. Okay. So the policy, really the IFA or the interim funding agreement is actually something that was ripped up, right? This was an agreement that went away. What the receiver owns is the original insurance policy. It was a $10 million policy, and I really don't want anybody to forget that the reason that that $10 million policy was settled for less than $2 million was because of the reason that there's a malpractice case. These law firms failed to give notice to the carrier. That's why it was such a hard-fought battle to get this $1.9 million and why the insurance company didn't – they were giving up $2 million on a really weak case, and they wanted complete resolution to do that. The IFA, which was between Mr. Queros and the law firms, is part of the policy. It's defense costs. It's proceeds of the policy that is owned by the receiver. It's the opposite of a windfall to the receiver. The receiver lost out, and the covered persons, on what was a $10 million policy. I also hope that the panel does not miss out on the fact that that IFA, they're seeking $1 million under that agreement of Mr. Queros' defense costs for work done in three months. And Judge Gail's point, the district judge's point, was what they're getting is $250,000, as far as the fairness goes, for three-and-a-half months of work. So that's why Judge Gail's looking at all of the facts and circumstances and exercising his very broad discretion here, considered very carefully all the facts and circumstances and determined this was absolutely essential and this was absolutely essential. Ms. Conte, this is Judge Marcus. I just have one question, and it really goes back to where you began with your argument. We kind of moved you off track with what I think I did with my questions. What is there in the settlement agreement itself, the text of the agreement, that says or suggests that the bar order was essential? Just point me to the sectional language that yields that conclusion. Well, Your Honor, you actually pointed to that on the record page, AA1049, in that paragraph K, that the settlement is contingent on the court's approval of the entire settlement, including the bar order. They use the word contingent very carefully. You actually pointed to that. Is there any other language? Honestly, I believe if the court looks to, on AA1050, which starts the discussion or lists out the tranches of payment, that the $500,000 payment will be subject to the court's approval. It will only be made upon finality of the bar order. Thank you. Okay. All right, thank you. Thank you, Ms. Gontig. We'll hear from Mr. Ghilardi on behalf of Appley Ironshore. Good morning, Your Honors, and may it please the court. My name is Joe Ghilardi, and I represent Appellant Ironshore. My time is short. I only have three minutes, and so I don't want to rehash arguments in the briefs or the ones that Ms. Gontig has already made. I just want to highlight a few points based on some of the questions that I heard during the initial presentation. As to whether the settlement is essential, the appellant is asking the question in the wrong way by focusing on the question that happens whether or not a payment or a bar order is made. The question is, would this case have settled? Meaning, would the claims between the receiver, Ironshore and Kiros have been resolved by a settlement in the first place if not for the bar order? And I can tell you without getting into privilege and things like that, it is set forth in our briefs, and I believe Judge Marcus referred to the statements in the briefs, this settlement agreement would not have happened. But you would agree what you not counseled, that what you put in the briefs would not be controlling if the text of the settlement agreement yielded a different conclusion. We wouldn't get to extrinsic evidence of that form unless we had to, would we? I don't agree because the question, Your Honor, isn't what does the settlement provide or not provide. I mean, it is pretty clear what the settlement says about if the $500,000 is paid or not, depending on a bar order. But when evaluating as a matter of equity, all of the factors and whether this is fair and what it really means to be essential to the settlement itself. Counsel, two minutes. Thank you. Let me ask the question slightly differently. Yes, Your Honor. Suppose a court in equity in a different kind of case was obliged, among other things, to discern the meaning of a contract. And the contract on its face was clear and unambiguous. Would the fact that the court was sitting in equity allow it to consider extrinsic statements by the parties as to the meaning of the contract where those extrinsic statements were squarely in conflict with the text of the contract itself? I'm not sure because generally I believe that would be a question of law. And if we were in deciding questions of law, that generally is the rule. But, again, this is a completely different context where all of the facts and circumstances should be considered. It's not just the language of the contract. If that's all it was, all of the case law and all of the discussion that goes beyond the terms of the settlement that considers many other factors, none of that would ever be necessary. Is the language of the contract clear? I believe the language of the contract is clear only in so far as it states that if a borrower is not entered, the $500,000 payment is not made. But that is not even the beginning, let alone the end, of the question of whether the borrower was essential, as the term is used in this circuit and in others, to whether the settlement would have happened in the first place. And it would not have happened in the first place. There would be no resolution but for the negotiation of the borrower terms. Also, just to highlight one other point, if I have the time, to be clear, under the IFA, the law firms were entitled to nothing under the policies. Therefore, they were entitled to nothing under the IFA. Thank you, Your Honor. All right, thank you, Counsel. We will now hear from Ms. Traband on behalf of Natalie Goldberg. Good morning, Your Honors. Stephanie Traband, and with the Court's indulgence, I will pick up exactly where Mr. Ghilardi ran out of time. He was focused on the fact that the IFA itself, on its own terms,  did not identify the law firms as third-party beneficiaries. To the contrary, Paragraph 9 of the IFA spoke specifically as to who the beneficiaries were. It was, of course, Kiros because it was to fund his defense costs and his successor's errors and assigns. It did not list the law firms. Judge Gales, when he was analyzing this, whether to enter the borrower order, had to engage in a fact-specific analysis to look at the strengths and weaknesses of the New York case as they were presented to him, as they were presented to him by both counsels for the appellees and the appellants. The appellants made that Ironshore was willing to pay $500,000 to settle the suit, so obviously the suit had some value. Wouldn't you agree? I would agree that Ironshore is willing to pay a total of $1.9 if it could get global peace as it pertained to it overall. And Ironshore was willing to pay more than $1.4 in order to get that global peace. Which was $500,000. Yes, $250,000 of which Judge Gales determined was reasonable to go. So 25% of the maximum claim that could have been awarded under the IFA was going to go to the law firms. There's been no case that says that providing compensation like that to barred parties was not sufficient. But your position that Quiros could have gotten paid under the IFA and not paid any of the money over to the law firms while, let's just say when it was being defended by the law firms, could Quiros have just pocketed the money from the IFA and not given that money to the law firms? No, I'm not saying that, Your Honors. But there is a provision that it could have, if Ironshore had approved other law firms, that he could have used it for other law firms. But there was no other law firms approved other than the two that we're dealing with and these other two law firms which apparently have no claim under the IFA. Right, but there is a provision and it's in paragraph... Sorry, it is record AA1152 that refers to the approved by Ironshore subsequent to the execution of this agreement. So it was contemplated, I believe, that other firms could have been retained by Mr. Quiros, their bill submitted and possibly approved by Ironshore. But I'm not saying, and I want to be clear that I'm not saying that... The agreement contemplates that if the bill is submitted, the money, while it may go to Quiros, will then go to the law firms. It won't stay with Quiros. Yes, and that was the point I was about to make. It's clear that it's only defense cost. It's not for funding any other purposes like living arrangements or whatever. That's clear that they were to be used for the cost of defense, but it was not necessarily to be used for solely to pay Leon Cosgrove or MSK. And the other point that I would like to... Counselor, the time has expired. Time has expired. You can finish your thought. Thank you. And it was switching gears, but I wanted to point out that at the time the order was entered by the lower court making clear that the asset freeze would not be violated by any payments of the IFA, the receiver himself was also asserting claims against Ironshore. It seemed to have gotten a little confused in presentations today as to whether the receiver had claims himself, but he did. They were pending as of July 2017, two months before that order modifying the asset freeze was entered. All right. Thank you, Counselor. Mr. Kahn, you've reserved some time for revival. Yes, Your Honor. Thank you. May it please the Court. Your Honor, I just want to point out that there was already an order on a motion to dismiss this appeal that was decided by Judges Pryor, Newsom, and Branch where they all took a look at this and they noted, and I quote, the appellees plainly intended that their settlement should remain in effect even if we invalidated the bar order as a matter of law or the bar order had never been entered in the first place. I think that alone, I think that's the correct finding and that demonstrates that the bar order was not essential. And going to Judge Wilson's point about Inree U.S. Oil & Gas, in that order the panel noted that in Inree Oil & Gas the parties had already stipulated in the court below that the bar order was integral to the settlement. So, again, that was not an issue. The essentialness question was not an issue in Inree U.S. Oil & Gas. Turning to the fairness, which is a separate and independent question from the essentialness requirement, I think Judge Bush hit the nail on the head that the settlement price for the bar order was $500,000. The settlement price for the claims of the actual parties in the settlement was $1.4 million. And there is no way that it can be fair and equitable for the receiver or Kiros to receive one cent, let alone $250,000, of the $500,000 settlement price to bar our claims, Leon Kostko's and MSK's claims. It's essentially legalized theft is the only way I could really describe it because they have already stated they are willing to settle their claims for only a $1.4 million payment. And the $500,000 is solely attributable to the claims of Leon Kostko and MSK. And finally, with the last few seconds, I want to point out that under paragraph 6, the IFA provides that the payments are paid to the law firms. It talks about monies received by the law firms under the agreement. And for the foregoing reasons, we ask that the court vacate the bar order. All right. Thank you, Mr. Khan. And thank you, counsel. Thank you.